Argued June 19, affirmed September 10, 1970

STATE OF OREGON, *Respondent, v.*
ARTHUR ANDREW JARVI, *Appellant.*

474 P2d 363

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief for appellant.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and BRANCHFIELD, Judges.

BRANCHFIELD, J.

Defendant was charged with the crime of first degree murder, entered a plea of not guilty and was found guilty of manslaughter by the court without a jury. He appealed.

The evening of December 2, 1967, the defendant shot and killed one Otto Albert Aho at the defendant's residence. Aho was killed almost instantly with a bullet fired from a bolt action 30.06 rifle fired at a distance of four to six feet from the victim.

Defendant claims he shot Aho in self-defense, to keep from being knifed. It is the state's position that the shot was fired in anger while Aho was seated peaceably on a chair in the kitchen.

Two rounds were fired by the defendant, with the first round missing Aho and exiting through the kitchen wall. Jarvi testified that the first shot was fired as a warning shot, but there was physical evidence from which it could be believed that the defendant simply missed Aho the first time. Two expended cartridge cases were found in the living room, indicating that the two shots were fired by the defendant while he was in that room. Police found the rifle on a chair in the living room.

Shortly after the shooting the defendant left his home and went to a telephone a mile or a mile and a half away and reported to police that he had just shot a burglar and didn't know him. The police arrived a few minutes later at which time the defendant stated to them that he did know the deceased and that they were fighting over the war. At his trial the defendant testified he killed Aho because Aho threatened to kill the defendant and have intercourse with defendant's common-law wife. He testified further that his prior statements were made because he was confused.

At the time of death the deceased was intoxicated, with a blood alcohol reading of .27 per cent. Some evidence indicated that the defendant and the decedent had been drinking together most of the day. The physical appearance of the defendant, the deceased and the house did not indicate that a fight or struggle had occurred. When the police arrived, the deceased was found lying face down, with his feet in the kitchen and the rest of his body in the living room, and with an open pocket knife in his right hand. Two doctors testifying as experts expressed contrary opinions as to whether the knife had been placed in the defendant's hand after he was shot.

Urine stains were found in the deceased's crotch area on both sides of the leg extending to the buttock area and on the deceased's right side up over the right hip into the upper belt area. The deceased's sweater was knotted up in an unusual position in the center of the deceased's back. Based upon that evidence, the doctors as experts stated opposite views as to whether the body had been dragged after death to the position in which it was found.

■■ The first assignment of error is that the trial judge examined an incriminating statement by the

defendant for the purpose of determining its admissibility. It is contended that the judge, by reading the statement, became aware of inconsistencies in the defendant's various discussions of the killing. Defendant contends that *Jackson v. Denno*, 378 US 368, 84 S Ct 1774, 12 L Ed 2d 908, 1 ALR3d 1205 (1964), requires that when a criminal case is tried to the court, a judge other than the trier of fact must make a preliminary determination that any statements of the defendant are admissible into evidence. The New York Court of Appeals rejected a similar contention in *People v. Brown*, 24 NY2d 168, 299 NYS2d 190, 247 NE2d 153 (1969). The New York court held that a trial judge is capable of applying constitutional standards of voluntariness to a defendant's statement without being influenced by evidence of defendant's guilt which may be contained in the statement itself. This case differs from *Denno*, supra, which dealt with exposure of a jury, not the judge, to an incriminating statement. Here, the court finally ruled (correctly) that defendant's statement was inadmissible, despite the fact that both parties had, by examination and cross-examination, brought portions of the statement to the court's attention. In the absence of prejudice appearing on the record, the presumption is that a trial judge sitting as the trier of fact is not prejudiced by irrelevant or otherwise inadmissible information that has come to his attention. See e.g. *State v. Carnathan*, 2 Or App 67, 465 P2d 899 (1970); *Lenahan v. Leach*, 245 Or 496, 500, 422 P2d 683 (1967). In summing up the evidence and announcing his finding of guilt, the trial judge made no reference to defendant's statement or to any matter contained therein except that which is supported by other substantial evidence.

Defendant cites *State v. Shirley*, 1 Or App 635,

465 P2d 743 (1970), in support of his contention that it was error for the court to consider the admissibility of defendant's statement. In that case, a judge trying a case without a jury examined a presentence report prior to announcing his determination of guilt. That examination was made outside the presence of the defendant and his attorney and without any prior opportunity to object. We held that it was error for the judge to consider such presentence investigation under those circumstances, because it interfered with the right of the defendant to be personally present during all aspects of the trial. That is not the situation here. There was no error in examining the statement to determine whether it was admissible.

■ Defendant's second assignment is that the court erred in refusing to grant the defendant's motion for judgment of acquittal. In reviewing the denial of a motion for judgment of acquittal, this court should view the evidence in the light most favorable to the state. *State v. Klutke*, 245 Or 302, 303, 421 P2d 956 (1966); *State v. Fichter*, 226 Or 526, 527, 360 P2d 278 (1961). There was ample evidence to support the trial court's finding that defendant was guilty of manslaughter.

■ Petitioner's third assignment of error alleges that the trial court erred in failing to require the state to prove beyond a reasonable doubt that the defendant's act of shooting and killing the deceased was unlawful and inexcusable.

Defendant argues that the only provision of law under which he could have been convicted was ORS 163.040 (3) which reads as follows:

"(3) Every killing of a human being by the act, procurement or culpable negligence of another,

> when the killing is not murder in the first or second degree, or not justifiable or excusable or negligent homicide as provided in ORS 163.091, is manslaughter."

The defendant argues that the court placed upon the defendant the burden of proving self-defense. In support, he quotes the following language of the court at the time of the summation of the evidence and decision of the court as to guilt:

> "So for the reasons which I have stated and for other reasons, the defense of justifiable homicide just doesn't exist. I express no opinion on where the burden of proof rests, but wherever it rests, it wasn't established."

Defendant cites the early case of *Goodall v. State*, 1 Or 333 (1861), which held it was error for the court to instruct the jury "that killing being admitted by the accused, it devolved on him to prove that it was justifiable." The language of the Supreme Court in that case is not decisive of the case at bar. Goodall was convicted of murder, not manslaughter, and the real question before the court then was whether the state should be required to establish malice by some evidence other than the mere proof of killing.

*State v. Holbrook*, 98 Or 43, 72, 188 P 947, 192 P 640, 193 P 434 (1920), seems to be the first Oregon case dealing with the burden of proof imposed when the defendant in a homicide case under a plea of not guilty raises the issue of self-defense. The court said:

> "* * * The measure of proof required of him [defendant] in such a case is not a mathematical demonstration, but enough merely to raise a reasonable doubt of his guilt in the minds of the jurors. * * *"

A fuller explanation of the degree of proof required is set forth in *Frank v. United States*, 42 F2d 623, 627 (9th Cir 1930), where the court said:

> "The question as to the degree of proof required by the defendant in a criminal case to establish his defense is of the utmost importance. The courts of last resort are not in harmony upon this question. In a great majority of the states, and particularly in the more recent decisions in such states, it is held that while the burden of establishing self-defense is upon the defendant unless the evidence of the prosecution discloses sufficient evidence thereof, the burden is sustained when, as a result of the whole evidence, a reasonable doubt has been created in the minds of the jury as to whether or not the homicide was in self-defense. If, from a consideration of the whole evidence, the jury entertains a reasonable doubt upon that question, that doubt is to be determined, like all other doubts in the case, in favor of the defendant. [Citations omitted.]"

In this case, the only testimony as to self-defense was that of the defendant himself. The trial judge stated in his summation that the defendant's story of an alleged attack by the deceased was so preposterous that it could not be believed and could not be accepted. In the light of this finding the above quoted language of the trial court, which defendant contends places a burden of proof upon him, loses its significance. The only doubt expressed by the court was whether the defendant should be convicted of second degree murder or manslaughter, and he correctly resolved that doubt in favor of the defendant by finding him guilty of the lesser offense.

Affirmed.